691 So.2d 1234 (1997)
Dudley J. BOYER, Jr.
v.
Pam D. BOYER.
No. 96 CA 0346.
Court of Appeal of Louisiana, First Circuit.
January 23, 1997.
Rehearing Denied May 8, 1997.
*1235 Paul M. Hebert, Jr., Baton Rouge, for Appellant Dudley J. Boyer, Jr.
Walton Barnes, II, Baton Rouge, for Appellee Pamela Boyer.
Before WHIPPLE, PITCHER and FITZSIMMONS, JJ.
PITCHER, Judge.
Dudley J. Boyer, Jr. appeals from a judgment rendered in favor of Pamela Boyer, setting aside the matrimonial agreement and partition of community property entered into by the Boyers during their marriage, and allocating the assets, claims and debts of the Boyers.[1]

*1236 BACKGROUND

Dudley and Pamela Boyer were married on May 28, 1980 in Denham Springs, Louisiana. Thereafter, the Boyers entered into a matrimonial agreement and a partition of community property. According to the facts established in this court's previous decision of Matter of Boyer, 616 So.2d 730 (La.App. 1st Cir.), writ denied, 620 So.2d 882 (La. 1993), both parties to the matrimonial agreement, Pamela Donnell Boyer and her husband, Dudley J. Boyer, Jr., were represented by independent counsel. On April 12, 1985, a matrimonial agreement terminating the community of acquets and gains that existed between the parties was executed before a notary and two witnesses, in compliance with Civil Code article 2331.[2] In conjunction with the matrimonial agreement, the parties also executed a partition of the community property, stating that they desired to partition and settle the community which formerly existed between them.[3] Mrs. Boyer's attorney acted as notary on both of these documents. The parties, through their attorneys, filed a joint petition for establishment of a separate property regime. The joint petition was filed in the Twenty-first Judicial District and assigned Suit No. 46,381. The parties also submitted an affidavit executed by Mr. Boyer and Mrs. Boyer, and notarized by Mrs. Boyer's attorney, stating that they had sought legal counsel, they had read the petition and the agreement, they understood the rules and principles involved, and that the agreement was in their best interests. Neither party requested a hearing or appeared before the court. The court reviewed the agreement and submitted documents and found that the parties understood the governing rules and principles and that the agreement was in the best interests of the parties. The court then rendered a judgment on April 19, 1985, stating as follows:
IT IS ORDERED that the community of acquets and gains existing between Dudley Jones Boyer, Jr. and Pamela Donnell Boyer is hereby dissolved, and these parties are hereby granted permission to execute the original of the matrimonial agreement filed in these proceedings in original form, to be filed in the appropriate mortgage and conveyance records as they see fit.
The matrimonial agreement, which has as an attachment a certified copy of the court's judgment, and the partition of community property were filed in the Livingston Parish conveyance records on April 24, 1985.
Thereafter, the Boyers purchased a piece of property located at 17931 Shoal Creek in the Country Club of Louisiana, in East Baton Rouge Parish. The cash sale of this property stated that the Boyers were living together, but were "separate in property" pursuant to a matrimonial agreement on file in the official records of Livingston Parish. The *1237 Boyers later built a residence on this piece of property.
The Boyers physically separated in September of 1990. A judgment of legal separation was rendered on December 7, 1990. The Boyers were subsequently divorced on July 18, 1991 by judgment rendered in Suit No. 92,818 in the Family Court for the Parish of East Baton Rouge.

PROCEDURAL HISTORY

TWENTY-FIRST JUDICIAL DISTRICT COURT[4]
On September 24, 1990, Mrs. Boyer filed a petition for declaratory judgment (Suit No. 62,074), seeking to have the matrimonial agreement and the partition of community property declared null and without legal effect. The petition alleged that the matrimonial agreement was an absolute nullity because (1) the procedure followed to obtain court approval was defective and (2) Mrs. Boyer was induced to sign the agreement, petition, and affidavit through duress. The petition further alleged that the partition of community property was absolutely null because (1) there was a failure of cause in that the partition stated that the community regime had already been terminated, when in fact this was not true, and the prior termination of the community was the cause for the partition; (2) the partition contained blanks which were filled in by persons other than Mrs. Boyer after the partition was signed, and (3) Mrs. Boyer was induced to sign the partition through duress.
In her prayer for relief, Mrs. Boyer sought a judgment, declaring the matrimonial agreement and partition of community property to be null and without any legal effect and allowing Mrs. Boyer to correct the public records.
Mr. Boyer filed an answer to Mrs. Boyer's petition on October 23, 1990; however, the record before this court contains only the last page of the answer filed by Mr. Boyer.
Although not contained in the record, this court's previous decision in Matter of Boyer reflects that Mrs. Boyer filed a motion for summary judgment praying that the matrimonial agreement and the partition be declared null. As a basis for the summary judgment, Mrs. Boyer argued that the agreement was defective because (1) the agreement was signed before court approval was given for the document to be signed; (2) a hearing, as contemplated by LSA-C.C. art. 2329, was not held; (3) the trial court that granted approval was misled into believing that the agreement had not been signed on April 12; and (4) the agreement was not in authentic form. Mrs. Boyer further argued that, if the agreement was null and without legal effect, the partition, which was entered into only because of the contemplated termination of the matrimonial regime, must also be declared null.
The record contains the trial court's written reasons for judgment, dated September 27, 1991, granting Mrs. Boyer's motion for summary judgment; however, the record does not contain the judgment rendered by the court.[5] The motion and order for appeal of the judgment, granting Mrs. Boyer's motion for summary judgment in this consolidated matter, declaring the matrimonial agreement and partition for community property to be null and without legal effect, was rendered and signed on October 14, 1992.
*1238 Mr. Boyer appealed and on March 5, 1993, this court rendered a decision finding that, under the circumstances presented by this case, the failure to hold a hearing and the pre-approval signing of the document did not nullify the agreement. Matter of Boyer, 616 So.2d at 732-733. Therefore, this court reversed the summary judgment granted by the trial court, which had declared the matrimonial agreement and partition null, and remanded the matter back to the trial court for further proceedings.[6]
On October 7, 1993, Mr. Boyer filed a first supplemental and amending answer, asserting as an affirmative defense acquiescence and/or ratification of the challenged documents. Mr. Boyer further alleged that because the judgment of April 19, 1985 (which dissolved the community of acquets and gains and granted approval to enter into the matrimonial agreement) was not appealed, the judgment was final. Thus, Mr. Boyer asserted that said judgment became law of the case as between the parties and res judicata as to the issues contained in the pleadings. Mr. Boyer also reurged his original answer and all of the defenses contained therein.
On September 7, 1993, Mr. Boyer filed a motion in limine, asking the court to issue an order excluding introduction of any evidence other than that relating to the issue of duress. In support of this motion, Mr. Boyer cited this court's decision in Matter of Boyer, finding no fatal defects in the procedure followed in executing the matrimonial agreement and the partition of community property.
Mrs. Boyer filed an opposition to the motion in limine, asserting that many of the arguments made which did not serve as a basis for the granting of the summary judgment, like the trial court was misled or the agreement was not in authentic form, were still before the court. Mrs. Boyer also asserted that this court's decision only reversed the granting of the summary judgment.
On February 16, 1994, the trial court signed a judgment, which had been rendered on October 25, 1993, denying Mr. Boyer's motion in limine, except as to matters of law previously determined by the Court of Appeal, First Circuit.
On February 16, 1994, the court, on its own motion, issued a judgment transferring the two cases which had previously been consolidated, No. 46,381 and No. 62,074, to the Nineteenth Judicial District Court. The transfer order stated that these matters were to be transferred to the Nineteenth Judicial District Court for consolidation with the suit entitled, "Dudley J. Boyer, Jr. vs. Pamela Boyer," Suit No. 364,619, Division M. This transfer order was approved as to content and form by counsel for both parties.

PROCEDURAL HISTORY

NINTEENTH JUDICIAL DISTRICT COURT
On December 20, 1990, Mr. Boyer filed a petition for partition in the Nineteenth Judicial District Court (Suit No. 364,619). In his petition, Mr. Boyer alleged that he and Mrs. Boyer each owned an undivided one-half interest in movable and immovable property located at 17931 Shoal Creek Drive in the Country Club of Louisiana, in East Baton Rouge Parish. Mr. Boyer further alleged that, because the parties could not agree on a nonjudicial partition of the property, it was necessary that the property be sold judicially to effect a division of the proceeds.
On January 14, 1991, Mrs. Boyer filed a peremptory exception pleading the objection of no right of action and a declinatory exception pleading the objection of lis pendens. Mrs. Boyer alleged that Mr. Boyer had no right of action to proceed because he had not followed the requirements set forth in LSA-R.S. 9:2801 for the partition of community property. Mrs. Boyer further alleged that because the question of whether there was a community property regime was to be resolved by another court, this proceeding amounted to a partial partition. Mrs. Boyer also alleged that the question of the contents of the community to be partitioned was the subject of litigation pending in another parish; *1239 therefore, the court should decline to hear this matter until that litigation was resolved. The trial court subsequently denied both of these exceptions on March 19, 1991. Thereafter, Mrs. Boyer filed an answer to the petition, generally denying all of the allegations contained therein.
On October 31, 1991, the court rendered a judgment, ordering Mr. Boyer to sell his interest in the Shoal Creek residence upon payment of one-half of the equity in the property on the date of the sale, the said amount to be calculated using the $490,000.00 value specified by Mr. Boyer in his sworn descriptive list attached to his petition for partition.[7] In its written reasons for judgment, the court determined that LSA-R.S. 9:2801 was applicable because of the decision rendered by the court in the Twenty-first Judicial District on September 27, 1991, finding that the matrimonial agreement was invalid.
On November 7, 1991, Mr. Boyer filed a motion for new trial, alleging that the October 31, 1991 judgment was rendered with no evidence taken or found in the record to establish the value of the Shoal Creek residence.
On November 12, 1991, pursuant to a motion filed by Mrs. Boyer, the court signed an order appointing a notary in accordance with LSA-R.S. 9:2801(3) to assist the court in the preparation of a list of all property held by the parties, including the identification of each piece of property, the classification of said property as community or separate, and the appraisal of said property. The record also reflects that on November 25, 1991, the court rendered a stipulated judgment appointing a court expert pursuant to LSA-R.S. 9:2801(3) to prepare a list of all of the property held by the parties, including the identification of each piece of property, its classification as separate or community, and the appraisal of said property.
On December 9, 1991, Mr. Boyer filed a motion for new trial, alleging that the judgment rendered on November 25, 1991 was not in accordance with the evidence and the law or based on the agreement or stipulation of the parties. Mr. Boyer further alleged that the judgment contained many errors inserted by Mrs. Boyer's counsel.
On December 11, 1991, Mr. Boyer filed a supplemental and amending petition, alleging that several gifts made to Mrs. Boyer during the marriage were automatically revoked by operation of law and should be partitioned as well. Attached to this petition was a supplemental and amending detailed descriptive list, setting forth these gifts and their respective values.
In a judgment rendered in open court on January 10, 1992, and signed on May 22, 1992, the court (1) granted the motion for new trial; (2) ordered an inventory of all property which belonged to the parties as community property, and (3) appointed an independent CPA to provide the court with a spreadsheet.
On July 16, 1992, Mr. Boyer filed a second supplemental and amending petition, alleging that he had used his separate property to pay expenses, debts, or obligations owed jointly or individually by the parties and thus, was entitled to be reimbursed by one-half, or in some instances, the entire amount. The petition itemized these expenses. Mr. Boyer also reserved his right to seek a judicial partition of jointly owned properties that may not be listed on the sworn descriptive list. Mr. Boyer further alleged that he was entitled to a "fair rental value" of the Shoal Creek residence, in anticipation of Mrs. Boyer's request for reimbursement for funds spent on the residence. Mr. Boyer also sought an accounting of all common funds from Design Concepts, Inc.[8] allegedly due to him under the matrimonial agreement which he claimed were never remitted. Additionally, Mr. Boyer sought an accounting of insurance proceeds that Mrs. Boyer allegedly received from policies insuring jointly owned property. Finally, Mr. Boyer sought to recover one-half of the payment *1240 made for membership in the Country Club of Louisiana.
On July 16, 1993, Mrs. Boyer filed an amended answer to Mr. Boyer's petition, an answer to Mr. Boyer's supplemental and amending petition, and a reconventional demand. In her amended answer, Mrs. Boyer admitted that she and Mr. Boyer owned an undivided one-half interest in the Shoal Creek residence but alleged that the movables in the residence were either owned by Design Concepts, Inc., Mrs. Boyer individually, or owned by the parties jointly as unpartitioned community property. Mrs. Boyer also admitted that the immovable property could not be partitioned in kind. In answer to Mr. Boyer's supplemental and amending petition, Mrs. Boyer admitted that the gifts were given, but denied that Mr. Boyer's allegations supported a claim for revocation.
In her reconventional demand, while specifically reserving any rights that she may have in the actions pending in the Twenty-first Judicial District Court, Mrs. Boyer sought reimbursement for all sums paid towards the maintenance of the immovable property and listed the sums allegedly due. In the alternative, only if it was found by the Twenty-first Judicial District Court, that the community was dissolved under the matrimonial agreement, Mrs. Boyer sought the following items of property allegedly acquired by the parties as community property, which had not yet been partitioned:
(1) Value of shares of Industrial Concepts, Inc. (ICI).
(2) Cash on hand or in Mr. Boyer's control as of the date of the termination of the community.
(3) All stocks, bonds, securities, notes, etc. in Mr. Boyer's name or his agents or alter egos.
(4) All movable property acquired with community funds.
(5) Shares of stock in the Country Club of Denham Springs, the Country Club of Louisiana and Shenendoah Country Club.
Mrs. Boyer also sought certain sums of money allegedly owed pursuant to the matrimonial agreement, if the agreement was upheld by the court. Mrs. Boyer alleged that, under Paragraph 4 of the agreement, the income of each spouse during the marriage was common property of the parties; therefore, Mrs. Boyer claimed one-half of all income earned by Mr. Boyer and one-half of all property purchased with Mr. Boyer's income.
In the alternative, if the partition of community property was determined to be valid, Mrs. Boyer alleged that, in consideration for this agreement, Mr. Boyer agreed to retain her as a beneficiary on a policy or policies of life insurance of approximately $2 million. Mrs. Boyer further alleged that, after they separated, Mr. Boyer removed her as beneficiary from the policy and subsequently canceled the policies.
On July 29, 1993, Mr. Boyer filed a dilatory exception pleading the objection of improper cumulation of actions. Mr. Boyer alleged that, because the reconventional demand sought a partition of community property and his petition sought the partition of property co-owned in division, the rules for each proceeding are different; therefore, the actions were improperly cumulated. Mrs. Boyer opposed Mr. Boyer's exception alleging that, because Mr. Boyer's petition for partition arose from the 1985 matrimonial agreement, she had to assert all causes of action arising out of this "transaction or occurrence." The court denied Mr. Boyer's exception in a judgment signed on October 26, 1993.
Thereafter, Mr. Boyer also filed an answer to Mrs. Boyer's reconventional demand, generally denying the allegations contained therein.
On September 2, 1993, Mr. Boyer filed a motion for partial summary judgment, alleging that there were no genuine issues of fact as to the Shoal Creek residence being owned in indivision; therefore, the court should order the property judicially partitioned through a licitation sale or private sale in accordance with the law. In support of his motion, Mr. Boyer asserted that Mrs. Boyer admitted in her amended answer to his original petition that the immovable property could not be partitioned in kind. Mrs. Boyer opposed Mr. Boyer's motion for summary judgment, alleging that there was an issue of fact as to the movables to be partitioned. *1241 Mrs. Boyer also alleged that a partition would be premature. On January 6, 1992, the court signed a judgment denying Mr. Boyer's motion for partial summary judgment.

TRIAL PROCEEDINGS

CONSOLIDATED MATTERS
The trial of these consolidated actions commenced on April 26 and concluded on July 28, 1994. Testimony was heard on April 26, 27, 28 and 29; May 4, 5[9], 24, 25; and July 26, 27 and 28, 1994. The record reflects that at some point before the trial began, the trial court indicated to both parties that this would be a "loosely" bifurcated trial. First, the parties would present witnesses and evidence on the issue of duress. Once this issue was resolved, the parties would then present evidence on the division of the community property.
Although the trial court issued no formal judgment on the issue of duress, the record reflects that the parties were informed on May 24, 1994 in open court that the contracts would be set aside based on duress. The record indicates that the parties then presented evidence, apparently proceeding as if the property was to be partitioned pursuant to LSA-R.S. 9:2801, although neither party had instituted such a proceeding.[10]
On the last day of trial, Mrs. Boyer introduced into evidence a Sworn Descriptive List over the objection of Mr. Boyer.[11]
On January 4, 1995, the trial court issued written reasons for judgment. A judgment was subsequently signed on January 25, 1995 which ordered as follows:
(1) The partition agreement and matrimonial agreement entered into by and between the parties dated April 12, 1985, are null, void and of no legal effect.
(2) There was no ratification of these agreements by [Mrs. Boyer] through her actions between 1985 and 1990.
(3) All property, both real and personal, acquired by Mr. and Mrs. Boyer during this period is community property and must be partitioned equally between them.
(4) The court adopted the Sworn Descriptive List of Assets and Liabilities filed by Mrs. Boyer and, based upon the testimony of the court's expert witness, CPA Debra White, adopted the expert's conclusions concerning reimbursement between the parties.
(5) Mrs. Boyer was entitled to one-half of the alleged "disguised dividends" disbursed to Mr. Boyer from Industrial Concepts, Inc. between December 31, 1990 and April 30, 1994, [and] should be declared the property of Mrs. Boyer
(6) Claims for an offset, reimbursement or fair rental value asserted by Mr. Boyer for Mrs. Boyer's use, occupancy and enjoyment of the Shoal Creek residence were denied.
*1242 On January 26, 1995, Mr. Boyer petitioned for an order of the court granting an appeal of the judgment of the trial court. The order was granted that same day.
On January 31, 1995, Mrs. Boyer filed a "Motion To Amend Judgment and Vacate Order of Appeal or, Alternatively Motion For New Trial And Vacate Order of Appeal." Mrs. Boyer alleged that counsel for Mr. Boyer had submitted a written judgment which was incomplete in that it failed to partition and allocate the community assets between the parties, as contemplated by the evidence, the pleadings and LSA-R.S. 9:2801. Mrs. Boyer further alleged that the trial court should amend the judgment previously signed to partition and allocate the community assets. Mrs. Boyer also requested that the appeal order be vacated. In the alternative, Mrs. Boyer sought a motion for new trial limited to the issue of partitioning and allocating the assets.
On January 31, 1995, the trial court signed an order, vacating Mr. Boyer's appeal. The trial court further ordered that Mrs. Boyer's counsel submit a proposed "Amended and Supplemental Judgment" partitioning and allocating the assets, all in accordance with the court's written reasons dated January 4, 1995.
On February 3, 1995, Mr. Boyer filed an opposition to Mrs. Boyer's motion to amend the judgment and vacate the appeal order. Alternatively, Mr. Boyer filed a motion for new trial, listing several issues to be readdressed.
On March 15, 1995, Mrs. Boyer filed an opposition in support of the motion to amend Judgment and vacate the order of appeal and in opposition to Mr. Boyer's motion for new trial.
Mr. Boyer filed a writ application with this court seeking review of the trial court judgment, vacating the order of appeal. On April 10, 1995, this court denied the writ application. (95 CW 0537).
On August 8, 1995, the trial court rendered a new judgment which ordered as follows:
(1) Mrs. Boyer's petition for declaratory judgment was granted and the purported matrimonial agreements and partitions are set aside and all properties, both real and personal, acquired by Pamela Boyer and Dudley Boyer during their marriage are declared to be community property which must be partitioned equally between them.
(2) The Sworn Descriptive List of assets and liabilities filed in these proceedings by Pamela Boyer is adopted by the Court and it is further declared that the conclusions of the experts concerning reimbursement shall be handled as herein below stated.
(3) One-half of the disguised dividends received from Industrial Concepts, Inc. by Dudley Boyer is declared to be the property of Ms. Boyer.
(4) Dudley Boyer's claim for fair rental value of the Shoal Creek residence is denied.
The judgment then allocated all of the assets, claims and debts of the parties.[12]
*1243 On August 30, 1995, Mr. Boyer filed a motion for new trial, alleging that he had located a new witness who had important testimony. The witness was Doug Nicholson, the attorney who had represented Mr. Boyer in his negotiations for the matrimonial agreement and partition of community property.
After a hearing was held on September 18, 1995, the trial court denied Mr. Boyer's motion for new trial in open court. The trial court subsequently signed a judgment, denying the motion for new trial on December 18, 1995.
On September 18, 1995, Mr. Boyer filed a petition for appeal which was ordered by the trial court that same day.
On October 13, 1995, Mr. Boyer filed an amended petition for appeal to include the trial court's denial of his motion for new trial. The trial court ordered that this appeal be granted on January 12, 1996.
Mr. Boyer now appeals from this judgment.

DISCUSSION
The various problems presented by this case begin with the statutory requirements necessary to enter into a matrimonial agreement during a marriage. LSA-C.C. art. 2328 provides as follows:
A matrimonial agreement is a contract establishing a regime of separation of property or modifying or terminating the legal regime. Spouses are free to establish by matrimonial agreement a regime of separation of property or modify the legal regime as provided by law. The provisions of the legal regime that have not been excluded or modified by agreement retain their force and effect.
Additionally, LSA-C.C. art. 2329 provides as follows:
Spouses may enter into a matrimonial agreement before or during marriage as to all matters that are not prohibited by public policy.
Spouses may enter into a matrimonial agreement that modifies or terminates a matrimonial regime during marriage only upon joint petition and a finding by the court that this serves their best interests and that they understand the governing principles and rules. They may, however, subject themselves to the legal regime by a matrimonial agreement at any time without court approval.
During the first year after moving into and acquiring a domicile in this state, spouses may enter into a matrimonial agreement without court approval.
Thus, in this case, there can be no valid matrimonial agreement without a determination by a court that the agreement serves the best interests of the parties and that they understand the governing principles and rules. It is undisputed that the Boyers complied with all of the requirements set forth in LSA-C.C. art. 2329 when they entered into a matrimonial agreement in April of 1985. It is undisputed that a court in the Twenty-first Judicial District rendered a judgment which dissolved the community of acquets and gains which formerly existed between the Boyers, and granted the Boyers permission to execute the original of the matrimonial agreement filed with the court. It is undisputed that this judgment was filed in the public records.
However, the law fails to provide any procedural guidance as to how one is to obtain court approval of a matrimonial agreement. More importantly, the effect of this court approval is unclear, particularly in a subsequent proceeding to attack the matrimonial agreement.
In the case at hand, Mrs. Boyer instituted a petition for declaratory judgment in the Twenty-first Judicial District Court.[13] As relief, Mrs. Boyer sought a judgment, declaring the matrimonial agreement and the partition of community property to be null and without any legal effect. In her petition, Mrs. Boyer made numerous allegations of defects in the court's actions in issuing the judgment, but she did not request that the *1244 judgment rendered in this matter be declared null and void as well.[14]
Although in her petition, Mrs. Boyer seeks as relief a declaratory judgment, her demand should have been treated as a suit to annul the contract (the matrimonial agreement) and a suit to annul the judgment (the judgment issued by the Twenty-first Judicial District Court dissolving the community of acquets and gains between the Boyers and granting them permission to execute the matrimonial agreement). See Gulotta v. Cutshaw, 283 So.2d 482, 488-489 (La.1973) (on rehearing).[15] We believe that LSA-C.C. art. 2329 dictates this result. The matrimonial agreement cannot be separated from the court approval because there can be no valid matrimonial agreement without court approval.[16]
An action to annul a judgment is subject to the venue requirements of LSA-C.C.P. art. 2006 which provides as follows:
An action to annul a judgment must be brought in the trial court, even though the judgment sought to be annulled may have been affirmed on appeal, or even rendered by the appellate court.
Venue is waivable in all cases, except in those actions where venue is made jurisdictional by specific articles of the code of civil procedure. Cheramie v. Acadian Ambulance Service, Inc., 95-0038, p. 4 (La. App. 1st Cir. 10/6/95); 671 So.2d 489, 491. The venue established in LSA-C.C.P. art. 2006 is nonwaivable. LSA-C.C.P. art. 44; Knight v. Sears, Roebuck & Company, 566 So.2d 135, 137 (La.App. 1st Cir.), writ denied, 571 So.2d 628 (La.1990).
In the instant case, we find that Mrs. Boyer correctly filed a direct action, seeking to nullify a judgment, in the court which rendered the judgment. See Knight v. Sears, Roebuck & Company, 566 So.2d at 137; Succession of Schulz, 622 So.2d 693, 695 (La.App. 4th Cir.1993), writ denied, 93-2605 (La.1/13/94); 631 So.2d 1161.
Although Mrs. Boyer's petition was properly filed in the Twenty-first Judicial District Court, the court which rendered the judgment on the matrimonial agreement, the case was subsequently transferred to the Nineteenth Judicial District Court. LSA-C.C.P. art. 123 A states as follows:
A. For the convenience of the parties and the witnesses, in the interest of justice, a district court upon contradictory motion, or upon the court's own motion after contradictory hearing, may transfer a civil case to another district court where it might have been brought; however, no suit brought in the parish in which the plaintiff is domiciled, and in a court which is otherwise a court of competent jurisdiction and proper venue, shall be transferred to any other court pursuant to this Article. (Emphasis ours).
The Nineteenth Judicial District Court was not a court where the suit could have been brought under LSA-C.C.P. art. 123 A. The Nineteenth Judicial District Court had no authority to render judgment on the validity of the matrimonial agreement. See Succession *1245 of Guitar, 197 So.2d 921 (La.App. 4th Cir.1967).
Accordingly, we vacate that portion of the trial court's judgment as to the matrimonial agreement and partition of community property, and remand this action to the Nineteenth Judicial District Court. Further, we hereby order the Clerk of Court for the Nineteenth Judicial District Court to transfer this action to the Twenty-first Judicial District Court for further proceedings consistent with this opinion.
Because a determination of the validity of the matrimonial agreement and the partition of community property would control what, if any community property is to be partitioned, the judgment of the court which partitioned the community property is vacated and the matter is remanded to the Nineteenth Judicial District Court for further proceedings consistent with this opinion.
VACATED AND REMANDED.
FITZSIMMONS, J., concurs in the result.

ON APPLICATION FOR REHEARING
Rehearing DENIED.
WHIPPLE, J., dissents and would grant rehearing for the attached reasons.
WHIPPLE, Judge, dissenting.
I dissent and would grant rehearing, finding, after further consideration, that in the interest of justice, the matter should be reviewed on the merits. While the 19th Judicial District Court arguably erred in accepting a transfer of this matter, the record reflects that a reconventional demand was filed in the East Baton Rouge proceeding requesting partition, reimbursement and accounting. More importantly, evidence was taken (over several days) and judgment was rendered on these issues.
Since both parties submitted evidence on the related issues of their rights under the marriage contract and their rights under a community regime, I find that rehearing should be granted to review on the merits the judgment at issue in Mr. Boyer's appeal. At a minimum, rehearing should be granted to clarify the nature and extent of the proceedings on the remand contemplated by our original opinion herein.
NOTES
[1] The actions presently before this court were initiated in different judicial districts by each party and proceeded separately simultaneously for four years before their consolidation. Mrs. Boyer filed a petition for declaratory judgment in the Twenty-first Judicial District Court (Suit No. 62,074). Mrs. Boyer's action was subsequently transferred and consolidated with Mr. Boyer's petition for partition (Suit No. 364,619) which had been filed in the Nineteenth Judicial District Court.

The record filed with this court on February 27, 1996 refers only to Suit No. 364,619 of the Nineteenth Judicial District Court. However, the proceedings pending in the Twenty-first Judicial District Court were transferred to the Nineteenth Judicial District Court. Thereafter, the Clerk of Court for the Nineteenth Judicial District Court assigned these proceedings Suit No. 404,978. Additionally, the May 5, 1994 minute entry in Suit No. 364,619 states that "the Court ordered Suit No. 404,978 be transferred to Division "M" under Suit No. 364,619 and the cases be consolidated for purposes for trial". However, the judgment rendered by the trial court is captioned Suit No. 364,619 of the Nineteenth Judicial District Court for the Parish of East Baton Rouge consolidated with Docket No. 62,074 of the Twenty-first Judicial District Court for the Parish of Livingston. The appeal of Suit No. 364,619 and 404,978 (formerly Suit No. 62,074 of the Twenty-first Judicial District Court) is properly before this court.
The record initially filed with this court contained no record of the proceedings transferred from the Twenty-first Judicial District Court. The record was supplemented on April 18, 1996 pursuant to a motion filed by Mr. Boyer on April 8, 1996, to ensure that the proceedings in Suit No. 404,979 (Suit No. 62,074 in the Twenty-first Judicial District Court) were before this court.
[2] LSA-C.C. art. 2331 provides as follows:

A matrimonial agreement may be executed by the spouses before or during marriage. It shall be made by authentic act or by an act under private signature duly acknowledged by the spouses.
[3] The record reflects that the matrimonial agreement was executed in East Baton Rouge Parish, and the partition of community property was executed in Livingston Parish.
[4] The record of the proceedings held in the Twenty-first Judicial District is sparse at best. A possible explanation lies in the fact that there were two matters pending in the Twenty-first Judicial District which had been consolidated for trial by the Twenty-first Judicial District Court. The order transferring the proceedings to the Nineteenth Judicial District Court reflects that both of the matters consolidated, Suit No. 46,381 (joint petition for establishment of separate property regime) and Suit No. 62,074 (petition for declaratory judgment), were to be transferred to the Nineteenth Judicial District Court. However, the Clerk's Certificate in the record from the Twenty-first Judicial District indicates that only a true and correct copy of the pleadings and documents, evidence adduced and proceedings conducted under Suit No. 62,074 was prepared and transferred to the Nineteenth Judicial District. This court cannot correct a record unless the evidence was available to the trial court. See LSA-C.C.P. art. 2132.
[5] The trial court's written reasons for judgment reflect that Suit No. 46,381 (the joint petition to establish a separate property regime) was consolidated with Suit No. 62,074 (petition for declaratory judgment) at this time.
[6] This court also noted in Matter of Boyer, 616 So.2d at 731, that court approval of the matrimonial agreement was obtained on April 19, 1985 and because that judgment was not appealed, it is definitive.
[7] Mr. Boyer's Sworn Descriptive List contained the Shoal Creek lot and residence, and the household furniture and fixtures located in the Shoal Creek residence.
[8] Design Concepts, Inc. is a business owned and operated by Mrs. Boyer.
[9] As noted earlier, the trial court consolidated Suit No. 364,619 (petition for partition) with Suit No. 404,979 (the proceedings transferred from the Twenty-first Judicial District Court) on May 5, 1994. Although LSA-C.C.P. art. 1561 allows for the consolidation of two or more separate suits at any time prior to trial, neither party in the instant matter objected to the consolidation of these suits in the middle of trial.
[10] We note here that the determination by the court that the matrimonial agreement and partition of community property are invalid does not lead to a partition of the community property without a request for such a partition. As of May 24, 1994, no full sworn descriptive lists had been filed by either party; therefore, there was nothing before the court listing all community property, its fair market value and location, and all community liabilities. In fact, the trial court rendered judgment which declared all properties, both real and personal, acquired by the Boyers during their marriage to be community property. Also confusing is the effect of the partition of community property declared invalid by the court. The record reflects that the financial evidence presented focused on 1985 (the year the Boyers entered into the agreements) and the years thereafter. The record further reflects that on June 13, 1994, the court appointed notary public filed a report with the court which inventoried the property in the Shoal Creek residence "using the INFORMAL INVENTORY OF 17931 SHOAL CREEK ROAD PREPARED 11/09/92" checklist. However, there was no such report in the record.
[11] The Sworn Descriptive List filed by Mrs. Boyer contains numerous movables for which no value is given. Also included in the Sworn Descriptive List is a section entitled "Reimbursements Due The Parties".
[12] We note that this judgment goes beyond the scope of a declaratory judgment by making a specific award of relief. LSA-C.C.P. art. 1871, Official Revision Comments. In fact, this judgment awards Mrs. Boyer far more relief than prayed for in her petition for declaratory judgment. The function of a declaratory judgment is simply to establish the rights of the parties or express the opinion of the court on a question of law without ordering anything to be done. Gulotta v. Cutshaw, 258 So.2d 555, 558 (La.App. 1st Cir.1972), reversed on other grounds, 283 So.2d 482 (La.1973).

Furthermore, the record indicates to this court that the second judgment rendered by the court clearly constituted a substantive alteration of the original judgment in contravention of LSA-C.C.P. art 1951. Villaume v. Villaume, 363 So.2d 448, 450 (La.1978). LSA-C.C.P. art. 1951 provides that a final judgment may be amended by the trial court at any time by its own motion or pursuant to the motion of any party, to alter the phraseology, but not the substance, of a judgment, or to correct errors in calculation. Preston Oil Company v. Transcontinental Gas Pipe Line Corporation, 594 So.2d 908, 911 (La.App. 1st Cir.1991). The proper vehicle for a substantive change in a judgment is a timely motion for a new trial or a timely appeal. Villaume v. Villaume, 363 So.2d at 451. However, it has been recognized that, on its own motion and with consent of the parties, a trial court may amend a judgment substantively, thereby creating a new, final judgment. See Preston Oil Company v. Transcontinental Gas Pipe Line Corporation, 594 So.2d at 912; Villaume v. Villaume, 363 So.2d at 451. Neither party has complained about the amendment of the judgment on appeal.
[13] We question whether a petition for declaratory judgment is the proper procedure to be used in this circumstance. For example, a declaratory judgment in this instance would not terminate the uncertainty or controversy giving rise to the proceeding. LSA-C.C.P. art. 1876.
[14] We note here that Mrs. Boyer clearly did not waive the issue of these alleged defects in the proceedings before the Nineteenth Judicial District Court.
[15] In fact, counsel for Mrs. Boyer informed the court that the whole purpose of the proceeding filed in the Twenty-first Judicial District Court was "to decide the 1985 judgment." However, counsel argued that if the agreements were declared invalid, then the effect of the judgment could be set aside. If the agreements were merely incorporated into the judgment, counsel's argument may have some validity. See Myers v. Myers, 532 So.2d 490 (La.App. 1st Cir.1988) and the cases cited therein. However, the situation before us is distinguishable because the matrimonial agreement is not valid unless court approval is obtained as required in LSA-C.C. art. 2329. Additionally, we note that in Thibodeaux v. Thibodeaux, 511 So.2d 102, 104-105 (La.App. 3rd Cir.1987), the Third Circuit determined that a judgment signed by the trial court which terminated a matrimonial regime and divided the existing community property between the two parties was a consent judgment and since it was not appealed, it became final and the only remedy was to seek to annul the judgment.
[16] We also note that a court's finding that an agreement is in the parties' best interests and that the parties fully understand the governing principles and rules appertaining thereto may be relevant in a subsequent attack of the agreement based on duress.